# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VINCE TRIPICCHIO, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> RALPH LAUREN CORPORATION; RALPH LAUREN RETAIL, INC.; VIBES MEDIA LLC; and JOHN DOES 1-20, <br><br> Defendants. | Case No.: <br><br><br> **COMPLAINT AND JURY DEMAND** <br><br> **PUTATIVE CLASS ACTION** |

## INTRODUCTION

1.     Plaintiff Vince Tripicchio, individually and on behalf of all others similarly situated, brings this action against Defendants Ralph Lauren Corporation, Ralph Lauren Retail, Inc., Vibes Media LLC, and John Does 1-20, to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## NATURE OF THE ACTION

2.     This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., (the "TCPA").

3.     Defendants Ralph Lauren Corporation and Ralph Lauren Retail, Inc. (the "Lauren Defendants") are designers, manufacturers, and sellers of mid-range to luxury fashion retail products.  To promote the sale of their products, the Lauren Defendants engage in unsolicited marketing through their agent Vibes Media LLC, harming thousands of consumers in the process.

4.     This case arises from Defendants' unauthorized text messages sent to cellular subscribers who never provided Defendants with prior express consent, as well as cellular subscribers who expressly requested not to receive Defendants' text messages.

5.      Defendants have been sued before for violating the TCPA and were aware of the restrictions imposed upon them by the TCPA.

6.      Through this action, Plaintiff seeks injunctive relief to halt Defendants' illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals.  Plaintiff also seeks statutory damages on behalf of himself and members of the Class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

7.      Jurisdiction is proper under 28 U.S.C. § 1331, as Plaintiff alleges violations of a federal statute.  Jurisdiction is also proper because Plaintiff is a citizen of a different state than that of Defendants, and seeks up to $1,500.00 (one thousand five hundred dollars) in damages for each text in violation of the TCPA, which, when aggregated among a proposed national Class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five million dollar) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").  Therefore, both the elements of federal question and CAFA jurisdiction are present.

8.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because the Lauren Defendants are headquartered within this district, and it is alleged that the unlawful texts complained-of herein originated from this district.

## PARTIES

9.      Plaintiff Vince Tripicchio is a natural person who at all times relevant to this action was a resident and citizen of New Jersey.

10.     Defendant Ralph Lauren Corporation is a Delaware corporation with its headquarters in New York, New York, and thus is a citizen of Delaware and New York.

11.    Defendant Ralph Lauren Retail, Inc. is a Delaware corporation with its headquarters in New York, New York, and thus is a citizen of Delaware and New York.

12.    Defendant Vibes Media LLC is a mobile marketing company with its headquarters in Chicago, Illinois, and thus is a citizen of Illinois.

13.    The Lauren Defendants direct, market, and provide their business activities, including the unlawful telemarketing activities complained of herein, from their headquarters in New York, New York to consumers throughout the United States. Specifically, it is alleged that the Lauren Defendants directed Defendant Vibes Media to transmit the unlawful texts complained of herein from their New York headquarters.

14.    Plaintiff does not know the true names or capacities of the persons or entities sued herein as Does 1-20, and therefore sues such Defendants under fictitious names. Plaintiff is informed and believes, and upon such information and belief alleges, that each of the Doe Defendants is in some manner legally responsible for the unlawful actions described herein and the damages suffered by Plaintiff and the Class as alleged herein. Plaintiff will amend this Complaint to set forth the true names and capacities of these Defendants when they have been ascertained, along with appropriate charging allegations as may be necessary.

## THE TCPA

15.    The TCPA prohibits: (a) any person from calling a cellular telephone number; (b) using an automatic telephone dialing system; (c) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

16.    The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity: (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

3

17.    In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

18.    The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

19.    In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express ***written*** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

20.    To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

4

21.    The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

22.    "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

23.    "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

24.    The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003).  This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id.*

25.    In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

26.    If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

27.    Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the ***text message***). (emphasis added).

28.    As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

## FACTUAL ALLEGATIONS

29.    On or about February 12, 2019, Defendants sent the following telemarketing text message to Plaintiff's cellular telephone number ending in 3148 (the "3148 Number"):



30.    Then, on or about February 21, 2019, Defendants sent the following telemarketing text message to Plaintiff's cellular telephone number ending in 3148:

> PoloFactoryStores: Calling all friends and family! Start saving today with this special savings offer: http://vbs.cm/W6E3kp.

31.    Thereafter, on or about February 23, 2019, Defendants sent the following telemarketing text message to Plaintiff's cellular telephone number ending in 3148:

> PoloFactoryStores:  Don't Miss Your 30% Off Friends & Family Offer!: http://vbs.cm/s6Y4kO
>
> Find A Store: http://vbs.cm/c6o4PO.



32.     Defendants sent numerous other text messages to Plaintiff's cellular telephone number ending in 3148 over the class period.

33.     Defendants' text messages were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

34.     Defendants' text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., Plaintiff's purchase of retail goods from Defendants' stores.

35.     The information contained in the text messages advertises Defendants' sales and specials at their retail stores, which messages Defendants send to promote their business and increase their sales and profit.

36.     Plaintiff received the subject texts sent by Defendants from this judicial district and, therefore, Defendants' violation of the TCPA occurred within this district.  Upon information and belief, Defendants caused other text messages to be sent from this district to individuals residing within this judicial district and throughout the United States.

37.     At no point in time did Plaintiff provide Defendants with his express written consent to be contacted using an ATDS.

38.     Plaintiff is the subscriber and sole user of the 3148 Number and is financially responsible for phone service to the 3148 Number.

39.     The impersonal and generic nature of Defendants' text messages demonstrates that Defendants utilized an ATDS in transmitting the messages.  *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.")

(citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130; *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

40.     The text messages originated from telephone number 89448, a number which upon information and belief is owned and operated by Defendants.

41.     The number used by Defendants (89448) is known as a "short code," a standard 5-digit phone number that enabled Defendants to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

42.     Short codes work as follows:  Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic.  These SMS gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a short code.

43.     Specifically, upon information and belief, Defendants utilized a combination of hardware and software systems to send the text messages at issue in this case.  The systems utilized by Defendants have the capacity to store telephone numbers using a random or sequential generator, and to dial such numbers without human intervention.

9

44.    Defendants' unsolicited text messages caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendants' text messages also inconvenienced Plaintiff and caused disruption to his daily life.

45.    Through its telemarketing calls, Defendants violated Plaintiff's substantive rights under the TCPA.

44.    Specifically, Plaintiff suffered the following concrete injuries:

    a.    Invasion of his privacy;

    b.    Inconvenience;

    c.    Unwanted occupation of his time and mental energy;

    d.    Unwanted occupation of his cellular telephone;

    e.    Nuisance;

    f.    Trespass on his cellular telephone; and

    g.    Aggravation and annoyance.

## CLASS ALLEGATIONS

43.    Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

44.    Plaintiff brings this case on behalf of a Class defined as follows:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message, from Defendants or anyone on Defendants' behalf, to said person's cellular telephone number, advertising Defendants' services, without the recipients' prior express written consent.**

45.    Defendants and their employees or agents are excluded from the Class.

46.    Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

47.     Upon information and belief, Defendants have placed automated and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent.  The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

48.     The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery.  Identification of the Class members is a matter capable of ministerial determination from Defendants' call records.

49.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class.  Among the questions of law and fact common to the Class are:

> (1) Whether Defendants made non-emergency texts to Plaintiff's and Class members' cellular telephones using an ATDS;
>
> (2) Whether Defendants can meet their burden of showing that they obtained prior express written consent to make such calls;
>
> (3) Whether Defendants' conduct was knowing and willful;
>
> (4) Whether Defendants are liable for damages, and the amount of such damages; and
>
> (5) Whether Defendants should be enjoined from such conduct in the future.

50.     The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely transmit text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

51.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

52.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

53.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable.    While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

54.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants.  For example, one court might enjoin Defendants from performing the challenged acts, whereas another may not.  Additionally, individual actions may be dispositive of the interests of the Class, although certain Class members are not parties to such actions.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)

55.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

56.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any

automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

57.    Defendants – or third parties directed by Defendants – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls and texts to the cellular telephones of Plaintiff and the other members of the Class defined herein.

58.    These calls were made without regard to whether or not Defendants had first obtained express permission from the called party to make such calls. In fact, Defendants did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when the calls were made.

59.    Defendants have, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

60.    Defendants knew that they did not have prior express consent to make these calls, and knew or should have known that they were using equipment that constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

61.    As a result of Defendants' conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation.  Plaintiff and the Class are also entitled to an injunction against future calls.  *Id.*

## COUNT II
### Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)

62.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

63.     At all times relevant, Defendants knew or should have known that their conduct as alleged herein violated the TCPA.

64.     Defendants knew that they did not have prior express consent to make these calls and texts and knew or should have known that their conduct was a violation of the TCPA.

65.     Because Defendants knew or should have known that Plaintiff and Class Members had not given prior express consent to receive the autodialed calls and texts, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

66.     As a result of Defendants' violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

**WHEREFORE**, Plaintiff on behalf of himself and the other members of the Class, pray for the following relief:

a. A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b. An injunction prohibiting Defendants from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express permission of the called party;

c. An award of actual and statutory damages; and

d. Such further and other relief the Court deems reasonable and just.

14

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.


Dated: June 5, 2019

s/ Ross H. Schmierer

**DeNITTIS OSEFCHEN PRINCE, P.C.**
Ross H. Schmierer, Esquire (RS-7215)
Stephen P. DeNittis, Esquire (*pro hac vice*
application forthcoming)
rschmierer@denittislaw.com
315 Madison Ave., 3rd Floor
New York, NY 10017
Telephone: 646.979.3642

*Counsel for Plaintiff and the Class*